IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEPHANIE T.,[1]

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

Civ. No. 6:21-cv-01738-AA

**OPINION & ORDER**

AIKEN, District Judge:

Plaintiff Stephanie T. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits. The decision of the Commissioner is AFFIRMED and this case is DISMISSED.

## BACKGROUND

On June 23, 2017, Plaintiff filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning on December 23, 2015. Tr. 242. The applications were denied initially and upon reconsideration and, at Plaintiff's request, a telephonic hearing was held before an Administrative

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION & ORDER

Law Judge ("ALJ") on April 10, 2019. *Id.* On July 1, 2019, the ALJ issued a decision finding Plaintiff not disabled. Tr. 253.

Plaintiff sought review by the Appeals Council and, on July 2, 2020, the Appeals Counsel reversed and remanded with instructions to further evaluate Plaintiff's mental impairments; give further consideration to Plaintiff's residual functional capacity; and obtain additional evidence from a vocational expert. Tr. 261-63.

On remand, a second hearing was held before an ALJ on April 16, 2021. Tr. 14. On May 10, 2021, the ALJ issued a decision finding Plaintiff not disabled. Tr. 27. On October 7, 2021, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 2. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante,* 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 23, 2015, through her date last insured, December 31, 2016.  Tr. 17.

At step two, the ALJ found that Plaintiff had the following severe impairments: persistent depressive disorder versus major depressive disorder; agoraphobia; generalized anxiety disorder; panic disorder; posttraumatic stress disorder ("PTSD"); obesity; chondromalacia of the right patella and status post arthroscopic chondroplasty of left knee; polyarthralgias; and diabetes mellitus type II. Tr. 17.  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  *Id.*

The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work with the following additional limitations: she can never climb ladders, ropes, or scaffolds; she can frequently balance and climb ramps and stairs; she can occasionally stoop, crouch, kneel, and crawl; she can frequently handle and finger bilaterally; she must avoid frequent exposure to irritants such as fumes, odors, dusts, and gases; she must avoid even occasional walking on uneven surfaces; she can understand, remember, carry out, and persist at simple, routine, repetitive tasks; she can make simple work-related decisions; she can perform work with few, if any, changes in the workplace; she cannot do assembly-line pace work; she can have no interaction with coworkers; no public contact; and no more than occasional supervision, "defined as requiring a supervisor's critical checking of the claimant's work." Tr. 20.

At step four, the ALJ found Plaintiff was unable to perform her past relevant work. Tr. 25. At step five, the ALJ found that Plaintiff was capable of performing work that existed in significant numbers in the national economy including work as a collator operator, office helper, and marker II. Tr. 26-27. As a result, the ALJ found that Plaintiff was not disabled. Tr. 27.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff alleges the ALJ erred by (1) improperly discounting Plaintiff's subjective symptom testimony and (2) improperly considering the medical opinion evidence. Of note, the ALJ's inquiry concerns the period of just over one year, between the alleged onset date of December 23, 2015, through Plaintiff's date last insured, December 31, 2016.

I.   **Subjective Symptom Testimony**

Plaintiff asserts that the ALJ erred by discounting her subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discounting the claimant's testimony regarding the severity of symptoms. *Id.*

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal quotation marks and citation omitted). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's testimony, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, unexplained failure to seek treatment or follow a prescribed course of treatment, or a claimant's daily activities. *Id.*

In her function report, Plaintiff stated that she is "unable to handle the pressure of deadlines,"; she is unable to travel alone; struggles to understand directions; and is "unable to interact with others by myself." Tr. 503. Plaintiff

reported that she has PTSD flashbacks "that cause breakdowns with extreme anxiety," and "extreme nausea." *Id.* Plaintiff stated that she plays with her son, but that her mother is Plaintiff's son's primary caretaker. Tr. 504. Plaintiff stated that she "can't get comfortable from pain and I have panic attacks in my sleep." Tr. 504. Plaintiff stated that she doesn't always get dressed without reminders; she cannot shower when home alone; she needs someone else to get groceries; and that she will "forget to use the bathroom." *Id.* Plaintiff stated that she cannot cook because she cannot sustain the necessary concentration and cannot tolerate the smells. Tr. 505. Plaintiff is able to fold laundry and take out trash, but that she needs "reminders and encouragement." *Id.* Plaintiff stated that she can drive if someone is with her and that she goes to the pharmacy drive-through but that she is "otherwise too scared or too anxious to drive. Tr. 506. She goes shopping for thirty minutes per week, and that "half of the time I sit in the car and wait." *Id.* Plaintiff goes to the gym multiple times per week and to therapy weekly. Tr. 507. Plaintiff often breaks plans "due to anxiety or illness." Tr. 508. She cannot walk for long distances and is too anxious to be in public. *Id.*

Plaintiff reported that she has trouble lifting, squatting, bending, standing, reaching, walking, kneeling, talking, hearing, seeing, remembering, completing tasks, concentrating, understanding, following instructions, and getting along with others. Tr. 508. Plaintiff stated that she is in "constant pain" in her joints and muscles and that she has a "hard time understanding stuff due to anxiety." *Id.* Plaintiff estimated that she could walk for one hundred feet before needing to rest for

five minutes. *Id.* Plaintiff believed that she could pay attention for one minute at a time and that she can only follow simple written or spoken instructions. *Id.* Plaintiff stated that she is unable to handle stress or changes to routine. Tr. 509.

At the 2021 hearing, Plaintiff testified that she lives with her mother and her son. Tr. 42. Plaintiff's mother supervises her son's online schooling, but Plaintiff "just help[s] when I can." Tr. 48. Plaintiff testified that she drives approximately once per week. Tr. 47. Plaintiff goes to the store once or twice a month. *Id.* Plaintiff cannot handle lines at the grocery store and, during the relevant period, would rely on her mother and significant other to help with shopping. Tr. 50.

When asked to describe a typical day, Plaintiff testified that she stays in her room and that she cannot watch television or read books. Tr. 48. Plaintiff can handle short, discrete tasks. *Id.* Plaintiff's son is diabetic and Plaintiff monitors his glucose levels. Tr. 49. Plaintiff testified that her mother takes care of preparing meals and insulin for Plaintiff's son. *Id.* Plaintiff testified that, during the relevant period she was not able to live independently and that she struggled with raising her son. Tr. 51-52. Plaintiff testified that her physical condition worsened after 2015. Tr. 56. She experienced fatigue, loss of endurance, and pain. *Id.*

Plaintiff testified as to the side effects of her medication, stating that Klonopin makes her tired and methotrexate "really lows me out." Tr. 46. During the relevant period, Plaintiff took oxycontin for pain, but described the experience as "terrible" and testified that she had to stop taking it. Tr. 52.

Plaintiff has difficulty with criticism. Tr. 52-53. Plaintiff testified that if she is presented with something she cannot understand she will shut down and be unable to continue because of her anxiety. Tr. 53. Plaintiff also suffers from agoraphobia. Tr. 54-55. Plaintiff has experienced episodes of disassociation, sometimes lasting hours. Tr. 57-58.

The ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 21.

The ALJ found that the objective medical evidence did not support Plaintiff's claims and testimony. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony," it is a factor that the ALJ can consider. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). However, a conflict between a claimant's testimony and the objective medical evidence is a proper basis for discounting subjective symptom testimony. *Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999).

Here, although Plaintiff alleged memory and concentration problems, the ALJ noted that Plaintiff's treatment records from during and close to the relevant period demonstrated intact memory and concentration. Tr. 19, 21. This is supported by the record. Tr. 590 (January 2014, finding "Cognition intact with intact concentration and attention and intact remote and recent memory during interview."); 598 (February 2014, finding same); 606 (February 2014, finding same); 614 (December

2015, finding "Remote and recent memory grossly intact during this visit. Concentration and attention grossly intact during meeting."); 623 (January 2016, finding same); 641 (April 2016, finding same); 668 (June 2016, finding same). The ALJ also noted that Plaintiff demonstrated appropriate and cooperative behavior during her examinations, contrary to her claims that she has difficulty interacting with others. Tr. 22. This is also supported by the record. Tr. 1818 (July 2016, Plaintiff's attitude noted to be "appropriate, cooperative," with "good eye contact."); 1823 (August 2016, finding same); 1827 (August 2016, finding same); 1832 (September 2016, finding same); 1836 (October 2016, finding same); 1839 (December 2016, finding same). Contrary to Plaintiff's claims of disabling agoraphobia, the ALJ noted that Plaintiff was able to move to a new location and attended appointments in that new location. Tr. 22. This is also supported by the record. Tr. 1766 ("Coincidentally, the claimant recently relocated to another state despite this fear and has attended dr appts since relocation which is an excellent indication that she is acclimating to her new surroundings."); Tr. 851 (Plaintiff "[s]tates she has moved in to her new home and that is going well."). On this record, the Court concludes that the ALJ reasonably considered the medical record in assessing Plaintiff's testimony.

The ALJ also considered Plaintiff's history of working at a substantial gainful level despite her long-standing impairments. Tr. 22. This is supported by the record. *See, e.g.,* 1867 (2011, Plaintiff reported anxiety); 1885 (2010, Plaintiff reports daily panic attacks); 1907 (2008, Plaintiff reports being unable to control her anxiety, which occurs every other day). Plaintiff was gainfully employed in this period. Tr.

475. In *Ahearn v. Saul*, 988 F.3d 1111 (9th Cir. 2021), the Ninth Circuit considered a similar situation in which the plaintiff had long-standing issues with "cognition, endurance, speed, depression, breathing, and sleeping," but that he had been gainfully employed for long periods. *Id.* at 1117. The Ninth Circuit found the plaintiff's work history with the long-standing impairments supported the ALJ's non-disability findings. *Id.* Consistent with *Ahearn*, the Court concludes that the ALJ reasonably considered Plaintiff's history of working despite her long-standing impairments.

The ALJ also noted that Plaintiff's condition improved with treatment. Tr. 21. "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). The ALJ conclusion are supported by evidence in the record. Tr. 622 (January 2016, Plaintiff reported improvement, feeling "less overwhelmed" and was able to leave her house for physical therapy multiple times per week); 704 (June 2017, Plaintiff "says that she experiences a lot of relief from her anxiety as a result" of treatment techniques); *compare* Tr. 667 (June 2016, Plaintiff reports multiple panic attacks per week) *with* Tr. 851 (September 2016, Plaintiff denies panic attacks to her treatment provider). On this record, the Court concludes that the ALJ conclusions regarding improvement are supported by substantial evidence in the record.

The ALJ found that Plaintiff's daily activities were inconsistent with her allegations. Tr. 22, 24. As noted, a claimant's daily activities are a valid consideration in assessing subjective symptom testimony. *Ghanim*, 763 F.3d at 1163.

Here, contrary to Plaintiff's allegations that her mother takes care of Plaintiff's son while Plaintiff remains mostly in her room, the record from the relevant period shows Plaintiff "feels able to care for her son daily,"; that she reads and plays with him; and "[p]repares meals for him." Tr. 622 (January 2016). In December 2016, Plaintiff reported that she was caring for her mother and son, who were ill. Tr. 927. Plaintiff's function report shows that she helped her mother with her son and that she goes to the gym and to swim with her roommate multiple times a week. Tr. 504, 507. The ALJ reasonably concluded that these activities were inconsistent with Plaintiff's testimony.

The ALJ also considered Plaintiff's alleged physical limitations. Tr. 24. As noted, Plaintiff alleged physical impairments in all areas of physical and postural activity except sitting, climbing stairs, and using her hands. Tr. 508. The ALJ noted that this was inconsistent with Plaintiff's function report showing that she assists with caring for her son and that she goes to the gym multiple times a week. Tr. 504, 507. On this record the ALJ reasonably discounted Plaintiff's alleged physical limitations.

In sum, the Court concludes that the ALJ gave sufficient clear and convincing reasons for discounting Plaintiff's subjective symptom testimony.

## II.  Medical Opinion Evidence

Plaintiff asserts that the ALJ erred by discounting the medical opinion evidence of Plaintiff's treating nurse practitioner Cory Hoover, PMHNP. The Ninth Circuit has clarified that under the new regulations, "the former hierarchy of medical

opinions—in which we assign presumptive weight based on the extent of the doctor's relationship—no longer applies." *Woods v. Kijakazi*, 32 F.4th 785, 787. Now, an ALJ's "decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* "The most important factors that the agency considers when evaluating the persuasiveness of medical opinions are *supportability* and *consistency*." *Id.* at 791 (emphasis added, internal quotation marks and citations omitted). For supportability, the regulations provide that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). As for consistency: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

Here, Mr. Hoover reported that Plaintiff suffers from panic attacks, intense fear when outside of her hours, an inability to concentrate, dissociation, chronic pain, frequent mood swings, and insomnia. Tr. 2173. Mr. Hoover believed that Plaintiff would miss work more than twice per month and that she only leaves her room to see her family for a few hours per day. *Id.*

Mr. Hoover also filled out a function report for Plaintiff in which he assessed marked impairment to her ability to understand, remember, or carry out both simple

and complex instructions, as well as in her ability to make judgments about complex work related matters. Tr. 2176. Mr. Hoover assessed moderate limitations to Plaintiff's ability to make judgments about simple work-related decisions. *Id.* Mr. Hoover assessed marked limitations in Plaintiff's ability to interact appropriately with coworkers, supervisors, or the public and in her ability to respond to changes in routine work settings. *Id.* Mr. Hoover attributed these issues to Plaintiff's "extreme anxiety related to unfamiliar settings, people, and high-stress situations like those found typically in work settings." Tr. 2177. Mr. Hoover believed Plaintiff also would be unable to meet deadlines. *Id.* Mr. Hoover reported that Plaintiff "does take an effective medication for panic and anxiety" and "the symptoms are often well-controlled but in times of higher stress she does decompensate and her function decreases dramatically." *Id.* Mr. Hoover estimated that Plaintiff would miss more than four days of work per month. Tr. 2178. Mr. Hoover believes Plaintiff's limitations dated back to December 2010. Tr. 2177.

The ALJ found Mr. Hoover's opinion unpersuasive and irrelevant, noting that Plaintiff's "functionality four years after the date last insured cannot be deemed to be representative of the claimant's functionality during the relevant period," and further noted that Plaintiff did not even begin to be treated at Mr. Hoover's clinic until three years after her date last insured. Tr. 24. In addition, the ALJ found that "such extreme limitation is inconsistent with the record as a whole," noting the contrary opinions of medical sources, and the "generally mostly normal presentation on examination within 12 months of the alleged onset date." *Id.*

With respect to supportability, Mr. Hoover personally began treating Plaintiff in September 2020, nearly four years after the relevant period. Tr. 2172. In addition, Mr. Hoover's statements appear to reflect her function at the time of the opinion, rather than her function during the relevant period. *See* Tr. 2173 ("*At this point*, she is only leaving her room 2-4 hr/day." (emphasis added)). On this record, the Court concludes the ALJ reasonably concluded that Mr. Hoover's opinion was not supported.

With respect to consistency, the ALJ contrasted Mr. Hoover's opinion with that of Dr. Ann Monis. Tr. 24. Dr. Monis prepared a medical statement in Plaintiff's case in which she reported that she had reviewed Plaintiff's medical records, Tr. 1758, and she assessed restrictions considerably less severe than those found by Mr. Hoover. Tr. 1755-56. In support of her opinion, Dr. Monis cited medical records showing improvement in Plaintiff's condition during the relevant period. Tr. 1763. Dr. Monis also cited records showing that Plaintiff's "ongoing medication management is effective," and that, despite Plaintiff's "ongoing reported 'fear' of leaving home," Plaintiff had "recently relocated to another state despite this fear and has attended dr appts since relocation which is an excellent indication that she is acclimating to her new surroundings." Tr. 1766. On this record, the Court concludes that the ALJ reasonably assessed Mr. Hoover's opinion as to consistency.

On this record, the Court concludes that the ALJ gave legally sufficient reasons for discounting the opinion of Mr. Hoover.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED and this case is DISMISSED.

It is so ORDERED and DATED this ___21st___ day of November 2023.

                                               /s/Ann Aiken
                                               ANN AIKEN
                                               United States District Judge